## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  PAULINE EDDY, Individually and as | ) | |
| Personal Representative for the Estate | ) | |
| of Sharon Eddy, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-18-1051-SLP |
| | ) | |
| 1.  BRICKTOWN HOSPITALITY, LLC, d/b/a | ) | |
| SPRINGHILL SUITES BY MARRIOTT | ) | |
| DOWNTOWN/BRICKTOWN; | ) | |
| 2.  ASTON MANAGEMENT COMPANY; | ) | |
| 3.  MARRIOTT INTERNATIONAL, INC.; and | ) | |
| 4.  EMPLOYEES JOHN DOE 1 - 20, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT

Defendant Marriott International, Inc. ("Marriott"), by counsel, respectfully submits

this Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. Rule of Civ. P. 12(b)(6) on

the grounds that Plaintiff has failed to state a claim upon which relief can be granted and

Plaintiff's claims should be dismissed with prejudice.  In support, Marriott offers the

following.

## I.      INTRODUCTION

In her Complaint, Plaintiff asserts causes of action for "Wrongful Death -

Negligence" [Count I], "Wrongful Death – Negligence in Involuntary Rescue" [Count II],

"Wrongful Death – Negligence *Per Se*" [Count III], "Wrongful Death – Gross Negligence"

[Count IV], "Respondeat Superior" [Count V], "Wrongful Death – Negligence as an

1

Innkeeper" [Count VI] and "Negligence; Ostensible Agency" [VII]. See Complaint at Doc.
1.

Essentially, Plaintiff's claims sound in dram shop liability: that the Defendants "had
a duty to use reasonable care in selling, serving and/or otherwise providing alcoholic
beverages to [the decedent]" and breached that duty by allegedly serving a lethal amount
of alcohol, continuing to serve after Sharon began to show signs of intoxication, failing to
devote time and attention to the amount of alcohol served, and failing to recognize Sharon's
level of intoxication.  Doc 1, ¶¶40-41.

## II.    STATEMENT OF ALLEGED FACTS

Plaintiff and her daughter, Sharon Eddy, traveled from New Mexico to Oklahoma
on November 17, 2017 for a family wedding. Doc. 1, ¶12. Plaintiff alleges that she and her
daughter specifically selected a Marriott hotel, the SpringHill Suites Oklahoma City
Downtown/Bricktown, as they often sought out "Marriott-branded hotels" due to their
reputation of safety and security. Doc. 1, ¶¶ 13, 15. Plaintiff alleges that Bricktown and
Marriott "owned and operated" the Bricktown SpringHill Suites and that the hotel utilized
signage, napkins, pens, uniforms, nametags, placards, literature, etc. indicating that it was
a SpringHill Suites/Marriott hotel.  Doc. 1, ¶¶ 14, 16, 17. According to Plaintiff, after she
and her daughter checked in to their room, Sharon asked if Plaintiff wanted to join her for
drinks in the hotel bar and Plaintiff declined the invitation.  Doc. 1, ¶ 20.  According to
Plaintiff, Sharon did not have anything to drink all day and was sober when she arrived at
the hotel bar. Doc. 1, ¶ 21.  Plaintiff alleges that the Defendant Employees proceeded to
sell, serve or otherwise provide alcoholic beverages to Sharon, even after they knew or

should have known that she was extremely intoxicated because she was "obviously impaired, both physically and cognitively, was unable to stand or walk, was unable to effectively communicate, and was unaware and confused." Doc. 1, ¶¶ 22-24. Then, Plaintiff alleges that the Defendant employees placed Sharon into a rolling office chair, rolled her onto the elevator and through the fifth-floor hallway, into Sharon's room (where Plaintiff was awake and watching television in bed), placed her in the bed next to Plaintiff, and left the room. Doc. 1, ¶¶ 26-29. Plaintiff does not allege that she was concerned about her daughter's condition, but rather alleges that she went to sleep shortly after the Defendant Employees left the room. Doc. 1, ¶ 32. According to Plaintiff, at approximately 2:00 a.m., her other daughter arrived at the hotel, laid down in bed next to Sharon and immediately discovered that Sharon was not breathing. Doc. 1, ¶¶ 33-34. Sharon was confirmed deceased, ultimately due to acute ethanol toxicity. Doc. 1, ¶¶ 36-38. On its face, Plaintiff's Complaint is a dram shop action for the death of Sharon Eddy as a result of her own voluntary intoxication and therefore fails as a matter of law under *Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, 813 P.2d 508.

## III.   STANDARD OF REVIEW

As the Supreme Court articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), a plaintiff must provide more than mere conclusory allegations in order to survive a Rule 12(b)(6) motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Id.*;* Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than

> labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see *5 C. Wright & A. Miller, Federal Practice and Procedure* § 1216, pp 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") .
> . . .

Id*.* at 555. In this regard, the court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff, but legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)).

## IV.    ARGUMENT

### A.    Plaintiff's Negligence (Count I), Negligence *Per Se* (Count III) and Gross Negligence (Count IV) claims fail as a matter of law

In Oklahoma, "[a] commercial vendor for on the premises consumption is under a duty, imposed both by statute and common law principles, to exercise reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party." *Brigance v. Velvet Dove Rest., Inc.,* 1986 OK 41, 725 P.2d 300, 304.  The *Brigance* case established a cause of action for dram shop liability in Oklahoma.  After *Brigance*, the Oklahoma Supreme Court decided *Tomlinson v. Love's Country Stores, Inc.* (1993 OK 83, 854 P.2d 910) and *Mansfield v. Circle K. Corp.* (1994 OK 80, 877 P.2d 1130), both

4

expanding dram shop liability to the sale of beer to a *minor* for *off-premises consumption*. More recently, the Oklahoma Supreme Court once again expanded dram shop liability to include causes of action against a commercial vendor of alcohol who sells alcohol to a noticeably intoxicated *adult* for *off-premises consumption*. In *Boyle v. ASAP Energy, Inc.*, the Plaintiffs claimed a convenience store negligently and recklessly sold low-point beer to a noticeably intoxicated person who injured plaintiffs in a vehicle collision several hours later. 2017 OK 82, 408 P.3d 183, *reh'g denied* (Dec. 11, 2017). In that case, the Oklahoma Supreme Court held that the injury suffered by Plaintiffs was of the type to be prevented by the statute, and that the Plaintiffs were members of the class of persons meant to be protected by the statute. *Id* at ¶ 41. In each instance (*Brigance*, *Tomlinson*, *Mansfield* and *Boyle*), the person injured was a member of the "unsuspecting public" whom the statute was designed to protect. Further, each case involved the sale of alcohol to persons who then went on to operate a motor vehicle.

However, in *Ohio Cas. Ins. Co. v. Todd*, the Oklahoma Supreme Court drew a distinction between actions where an unsuspecting member of the public is injured and those in which the intoxicated person sustains injuries as a result of *his or her own voluntary intoxication*. 1991 OK 54, 813 P.2d 508. In that case, Rick Robertson was injured in a one-car accident after having been served alcohol in Todd's Tavern. *Id*. Ohio Casualty Insurance Company instituted a declaratory judgment action as to its duty to defend and indemnify Todd for any lawsuits resulting from this occurrence. *Id*. Robertson filed a cross-claim against Todd, alleging that the employees of Todd's Tavern served him alcoholic beverages when he was noticeably intoxicated in violation of 37 O.S.1981, § 537,

5

and that for this reason Todd was liable for his injuries. *Id*. Todd moved to dismiss the cross-claim under Federal Rule 12(b)(6) because such a cause of action did not exist under Oklahoma law. *Id*. The question was certified by the federal court to the Oklahoma Supreme Court which found that a tavern owner has no liability to an intoxicated adult who voluntarily consumes alcoholic beverages to excess and sustains injuries as a result of his intoxication. *Id* at 512.

In reaching its decision, the Oklahoma Supreme Court first examined Robertson's negligence per se claim and reasoned that Robertson was not of the class intended to be protected by the statute:

> We find nothing in Section 537(A)(2), or in any of the statutes regulating the sale of alcohol, which indicate that the legislature intended to protect the intoxicated adult who, by his own actions, causes injury to himself. Instead, it appears that the legislature intended to protect the "unsuspecting public"- in effect all of the populace *except* the willing imbiber. Thus, a violation of Section 537(A)(2) does not amount to negligence *per se* under the facts of this case.

*Id* at 510 (citations omitted). Next, the Oklahoma Supreme Court examined the question of whether a common law cause of action existed for an adult who voluntarily drinks to the point of intoxication and is thereby injured. The answer was a resounding no:

> In a world where alcohol is readily available for consumption by adults the ultimate accountability should rest on the adult consumer, absent unusual circumstances or injury to an innocent third party. A court that creates, as in *Brigance,* a cause of action based on public policy has a burden to responsibly chart the boundaries beyond which the new cause of action does not serve the public, and should not be the law. By that standard we see no public policy that would demand extension of the traditional tort law.

*Id* at 512.

6

Here, because the injury sustained (acute alcohol toxicity) was the result of Sharon Eddy's voluntary alcohol consumption, Plaintiff's negligence claim (arising out of common law dram shop liability) is not a viable cause of action under these facts pursuant to *Ohio Cas. Ins. Co. v. Todd*.  Further, because Sharon Eddy was not in the class of persons intended to be protected by the Oklahoma Alcoholic Beverage Control Act (the unsuspecting public), her negligence *per se* claim also fails as a matter of law under *Ohio Cas. Ins. Co. v. Todd*.  Accordingly, because no duty was owed by Defendant Marriott under these facts, Plaintiff's claim for gross negligence likewise fails.  In summary, Plaintiff has failed to state a claim upon which relief can be granted with regard to her claims sounding in negligence, negligence *per se* and gross negligence, and such claims against Defendant Marriott should therefore be dismissed.

**B.      Plaintiff's Negligence in Voluntary Rescue claim (Count II) is not based on Oklahoma Statutory or Common Law**

Plaintiff also alleges that Sharon, after being overserved, appeared "helpless," suffering from confusion and being unable to stand or walk.  Plaintiff alleges that the Defendant Employees "voluntarily took charge of Sharon in an effort to assist her" and ultimately "left Sharon in a worse position that she was before."  Plaintiff sets forth the following elements of liability for voluntary rescue: "an actor owes a duty to a person who reasonably appears imperiled and incapable of adequately caring for herself if (a) the actor voluntarily takes charge of the helpless person intending to assist her in confronting the peril, and (b) the actor discontinues the assistance and leaves the helpless person in a worse position than before."  Plaintiff appears to applying the law of a Washington case with

7

nearly verbatim language, *Mita v. Guardsmark, LLC*, 182 Wash. App. 76, 87, 328 P.3d 962, 968 (2014)("An actor owes a duty to a person who reasonably appears imperiled and incapable of adequately caring for himself or herself if (1) the actor voluntarily takes charge of the helpless person intending to assist him or her in confronting the peril, and (2) the actor discontinues the assistance and leaves the helpless person in a worse position than before."). This concept is adopted in part from the Restatement (Third) of Torts[1] and the Restatement (Second) of Torts[2]. *Id.*

However, this particular duty has not been adopted in Oklahoma. In *Brewer v. Murray*, the mother of a 14-year-old girl was sued by the daughter's 13-year-old friend who was invited over to spend the night at the defendant's house. 2012 OK CIV APP 109, 292 P.3d 41. Plaintiff alleged that she was sexually assaulted by the daughter's 19-year-old male acquaintance when defendant left her daughter and the plaintiff unsupervised such that they were able to drink defendant's alcohol and invite others to the house. *Id.* The trial court granted summary judgment for defendant and the Oklahoma Court of Civil Appeals reversed and remanded, holding that defendant owed plaintiff a duty. *Id* at 48. While ordinarily one had no duty to protect another from the criminal conduct of a third party in

---

[1] (b) An actor who discontinues aid or protection is subject to a duty of reasonable care to refrain from putting the other in a worse position than existed before the actor took charge of the other and, if the other reasonably appears to be in imminent peril of serious physical harm at the time of termination, to exercise reasonable care with regard to the peril before terminating the rescue. Restatement (Third) of Torts: Phys. & Emot. Harm § 44 (2012)

[2] One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

- (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
- (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Restatement (Second) of Torts § 324 (1965)

the absence of a special relationship, the Court acknowledged that defendant was potentially liable to plaintiff for the 19-year-old's criminal conduct under several exceptions to the general rule, including those set forth in Restatement (Second) of Torts §§ 320, 323, 324, and 324A. *Id.* In other words, the Oklahoma Court of Civil Appeals did not adopt the duty set forth in Restatement (Second) of Torts § 324, but acknowledged that it might apply under the facts in *Brewer*, which are not at all analogous to the instant case.

Further, a footnote to the dissenting opinion in *James v. O'Neal*, 1992 OK CIV APP 49, 838 P.2d 31, 36, references § 324. In that case, the estate of a deceased teenager sued the teenager's friend and the friend's aunt and uncle for negligence after the teenager, who was intoxicated, was brought by friend to his aunt and uncle's house and died shortly thereafter from a bloodless gunshot wound sustained earlier that night in friend's presence. *Id.* In that case, the Court of Civil Appeals affirmed the trial court's grant of summary judgment on the basis that defendants owed no duty to the teenager. *Id.* These are the only references to this particular duty set forth in the Restatement under Oklahoma case law. Because Oklahoma has not adopted this duty, Plaintiff's claim of "Negligence In Voluntary Rescue" (Count II) fails as a matter of law.

## C.     Plaintiff's Negligence as Innkeeper claim (Count VI) is not based on Oklahoma Statutory or Common Law

Plaintiff also claims that an innkeeper has a special relationship with guests and thus owes guests an "elevated duty of care, including a duty to reasonably protect guests from harm." In paragraph 80, sections (A) and (B) of Plaintiff's Complaint, Plaintiff essentially regurgitates the dram shop liability theory. However, Plaintiff goes on to state that

9

Defendants Bricktown and Aston (and therefore allegedly Marriott under a theory of ostensible agency) had a "duty to protect guests from unreasonable risk of physical harm, [...] to render first aid to their overnight guests and [...] care for injured guests until they can be appropriately cared for by others." This is once again a duty imposed by the Restatement (Second) of Torts § 314A: An innkeeper is under a duty to its guests to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others. Restatement (Second) of Torts § 314A (1965). Likewise, this duty has not been adopted by Oklahoma law. To the contrary, innkeeper liability is clearly enumerated in 15 O.S. § 501. Under that statute, an innkeeper is liable for losses or injuries to the personal property of its guests. *Id.* Evidently the Legislature is capable of imposing, and has imposed, a heightened duty of an innkeeper under certain circumstances. However, the duty to render first aid to guests is not part of that heightened duty enumerated by the laws of the state of Oklahoma. With regard to the allegation that an innkeeper has a duty to "care for [guests] until they can be cared for by others," the Complaint on its face clearly alleges that the Defendant Employees did just that; caring for Sharon Eddy until she was returned safely to her room where her mother could care for her. Plaintiff's Count VI should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.

      **D.**    **Plaintiff has not plead sufficient facts to establish Ostensible Agency (Count VII)**

Because Marriott owed no duty under a *Brigance* cause of action, or under the other theories of liability addressed above, Plaintiff's Ostensible Agency claim (Count VII) also fails as a matter of law.  However, even if the Court denies this motion with regard to Plaintiff's other claims, Plaintiff has still failed to plead facts sufficient to establish liability under a theory of ostensible agency.

Plaintiff correctly alleges that Defendant Bricktown Hospitality, LLC operates the SpringHill Suites under a license from Marriott, a franchisor that neither owns nor operates the hotel.  However, Plaintiff is mistaken that Defendants Bricktown and Aston were the ostensible agents of Marriott "because of the business relationship" between the parties.  In Oklahoma, an agency relationship requires the existence of "some degree of control by the principal over the conduct and activities of the agent." *Agee v. Gant*, 1966 OK 31, 412 P.2d 155, 160.  But a franchisor may exercise some control to protect its national identity, reputation and trademark, as Marriott did here, without creating an agency relationship. See *Thornton v. Ford Motor Co.*, 2013 OK CIV APP 7, ¶ 20, 297 P.3d 413, 419–20.  The Oklahoma Supreme Court has rejected the idea that a person's belief that a display of "distinctive colors and trade mark signs" creates an agency relationship based on apparent authority.  *Id* at ¶ 30, citing to *Coe v. Esau,* 1963 OK 1, 377 P.2d 815 and *Stephens v. Yamaha Motor Co., Ltd. Japan,* 1981 OK 42, 627 P.2d 439.  In other words, as a matter of law, Plaintiff's allegations that the hotel utilized signage, napkins, pens, uniforms, nametags, placards, literature, etc. displaying SpringHill Suites marks are not sufficient to establish that Bricktown (and Aston) were the ostensible agents of Marriott.  Accordingly, Plaintiff's ostensible agency claim also fails as a matter of law.

11

## V.     CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff has failed to allege facts sufficient to show that Marriott had a duty to Plaintiff under theories of negligence, negligence *per se*, or gross negligence under *Brigance*. Further, Plaintiff's alternative theories of liability for negligence in voluntary rescue and negligence of an innkeeper are not based on existing Oklahoma statutory or case law and therefore likewise fail.  Finally, Plaintiff has failed to allege facts sufficient to show that Bricktown and Aston were the ostensible agents of Marriott.

WHEREFORE, Defendant Marriott International, Inc. respectfully moves to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

*s/ Hailey M. Hopper*
Peter L. Wheeler
Oklahoma Bar No. 12929
Hailey M. Hopper
Oklahoma Bar No. 31093
Attorneys for Defendant,
Marriott International, Inc.
Pierce Couch Hendrickson
  Baysinger & Green, L.L.P.
Post Office Box 26350
Oklahoma City, Oklahoma 73126
Telephone:   (405) 235-1611
Facsimile:    (405) 235-2904
pwheeler@piercecouch.com
hhopper@piercecouch.com
***Attorneys for Defendant***
***Marriott International, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that on November 29, 2018, I electronically transmitted the attached Notice to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

John D. Wheeler:          jdw@jdw-law.com
Daniel G. Webber, Jr.:    dwebber@ryanwhaley.com
Chance L. Pearson:        cpearson@ryanwhaley.com

*s/ Hailey M. Hopper*